IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carolyn Denise Bryant, | ) | Civil Action No. 8:14-cv-02087-TLW-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

On April 24, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 7, 2011.  [R. 141–153.]  The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 60–111.]  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on August 28, 2013, ALJ Kelly Wilson conducted a de novo video hearing on Plaintiff's claim.  [R. 28–59.]

The ALJ issued a decision on March 3, 2014, finding Plaintiff not disabled.  [R. 11–23.]  At Step 1,[3] the ALJ found Plaintiff meets the insured status requirements of the Social Security Act ("the Act") through December 31, 2016, and has not engaged in substantial gainful activity since June 7, 2011, the alleged onset date.  [R. 13–14, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had a severe impairment of rheumatoid arthritis.  [R. 14, Finding 3.]  The ALJ found that Plaintiff's medically determinable mental impairments of anxiety and depression did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  [R. 14–17.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 17, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work ("PRW"), the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only perform frequent bilateral handling and fingering and frequent use of hand controls with the bilateral upper

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> extremities. The claimant can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. The claimant should avoid even moderate exposure to extreme cold and extreme heat, and she needs to avoid concentrated exposure to wetness.

[R. 17, Finding 5.] Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could perform her PRW as a cashier and retail sales associate. [R. 22, Finding 6.] Accordingly, the ALJ found Plaintiff had not been under a disability as defined by the Act from June 7, 2011, through the date of the decision. [R. 22, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined. [R. 1–6.] Plaintiff filed this action for judicial review on May 29, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1.   the ALJ committed reversible error by failing to accord great weight to the opinion of Plaintiff's treating psychiatrist, Dr. Ernest Martin, and by according significant weight to the reports of non-treating state agency consultants [Doc. 14 at 11–16];

2.   the ALJ committed reversible error in failing to find Plaintiff's psychiatric condition was not severe [*id.* at 17]; and,

3.   the ALJ's finding that Plaintiff could perform her PRW is not supported by substantial evidence [*id*. at 20–22].

Plaintiff also claims the Appeals Council committed reversible error by failing to properly consider additional medical evidence submitted by Plaintiff. [*Id.* at 17–20.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

1.    the ALJ properly evaluated the medical opinion evidence of record in accordance with the regulations [Doc. 15 at 9–15];

2.    the ALJ's finding that Plaintiff's mental impairment was non-severe is supported by substantial evidence [*id*. at 15–18]; and

3.    the ALJ's RFC determination was appropriate and the ALJ properly found that Plaintiff could perform her PRW  [*id*. at 6–8].

The Commissioner also contends that the Appeals Council acted properly because Plaintiff's post-hearing submissions did not warrant remand and did not qualify as new and material evidence. [*Id*. at 18–21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

4

[Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4] With remand under sentence

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I. The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**     ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

11

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

---

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where

13

a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

14

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

15

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the

> absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Plaintiff's Background with the Administration**

The ALJ set forth Plaintiff's history with the Administration as follows.  Plaintiff

reported a prior period of disability between 1998 and 2008 due to mental disorders.  [R.

11.] The Administration granted Plaintiff's disability claim based on her mental disorders

at some points between 1998 and 2008. [*Id*.]   The ALJ summarized the relevant

Commissioner's records as follows:

> Social security records indicate the claimant's benefits were
> ceased and restarted on various occasions between 2002 and
> 2008 due to work activity and requests for reinstatement. This
> eventually led to an overpayment of benefits, which is not
> under consideration in this determination.  In July 2008, the
> claimant was notified that she could no longer receive
> provisional Social Security disability benefits based on her
> request for reinstatement. The last date for which she could
> receive provisional benefits was June 2008. The claimant
> appealed this decision and filed a request for a hearing. A
> hearing was scheduled but the claimant did not appear as
> directed. Consequently, her request for hearing was dismissed
> on March 9, 2010.

[*Id*.]

Plaintiff filed her present application for DIB and SSI on April 24, 2012, alleging

disability beginning June 7, 2011, due to major depression with anxiety and rheumatoid

arthritis.  [R. 60.]

**Treating Physician's Opinion**

Plaintiff argues that the ALJ committed reversible error by failing to give great weight

to the opinion of Plaintiff's treating psychiatrist, Dr. Ernest Martin ("Dr. Martin") that Plaintiff

had severe mental limitations which precluded her from performing substantial gainful

work.  [Doc. 14 at 11–12.]  Plaintiff contends the ALJ's conclusion that the limitations noted by Dr. Martin were inconsistent with his own treatment records was an improper basis for rejecting Dr. Martin's opinion because he had provided psychiatric treatment to Plaintiff for an alleged sixteen years and completed a five-page detailed evaluation of her mental abilities. [*Id*.] Plaintiff also contends that treatment notes are used to monitor how a patient is responding to treatment and for internal use and do not typically address an individual's ability to perform substantial gainful work.  [*Id*.]  Likewise, Plaintiff argues the ALJ erred in giving more weight to the opinions of non-examining, non-treating, state agency consultants when their opinions are contradicted by all other evidence of record. [*Id*. at 13.] On the other hand, the Commissioner argues that the ALJ properly gave no weight to Dr. Martin's opinion about Plaintiff's mental functioning.  The Court agrees with Plaintiff that the ALJ failed to give sufficient consideration to Dr. Martin's opinion in accordance with applicable Social Security law.

### *Dr. Martin's Opinion*

Treatment records indicate Plaintiff began seeing Dr. Martin in May of 2011 for therapy and medication management.  [R. 271.]  Treatment notes on May 5, 2011, indicate Plaintiff reported she was doing well on her medication, that there was no evidence of psychosis, and that her anxiety was adequately controlled.   [*Id*.]  Progress notes from December of 2011 and May, June, and October of 2012, all consistently described Plaintiff's appearance, behavior, activities of daily living ("ADL"), and memory as normal. [R. 269, 270, 299–301.]   The progress notes also indicated Plaintiff interacted and participated; her thought was described as linear/goal directed, with no abnormalities in

19

content; she was fully oriented; her judgment and insight were intact; and her attention/concentration was good or "other." [*Id*.] Progress notes from May of 2012 indicated Dr. Martin's assessment was that Plaintiff had "some worsening," and the notes from October of 2012 indicated Plaintiff had mood swings and was worried. [R. 301, 362.] Progress notes dated April and June of 2013 also described appearance, behavior, ADL, and memory as normal. [R. 360, 361.] They also indicated Plaintiff interacted and participated; her thought was described as linear/goal directed, with no abnormalities in content; she was fully oriented; her judgment and insight were intact; and her attention/concentration was fair. [*Id*.] Those progress notes also indicated the presence of mood swings or mood shifts. [*Id*.]

On July 29, 2013, Dr. Martin completed a Mental RFC evaluation form on Plaintiff's behalf. [R. 355.] Dr. Martin indicated that Plaintiff's diagnosis was "major depression, recurrent with psychotic features." [*Id*.] Dr. Martin explained that Plaintiff exhibited the following signs/or symptoms:

* poor memory
* appetite disturbance
* sleep disturbance
* personality change
* mood disturbance
* emotional disturbance
* delusions or hallucinations
* recurrent panic attacks
* anhedonia or pervasive loss of interest
* psychomotor agitation
* paranoia or inappropriate suspiciousness
* difficulty thinking or concentrating
* feelings of guilt/worthlessness
* oddities of thought, speech or behavior
* perceptual disturbance
* blunt, flat or inappropriate affect
* decreased energy

* generalized persistent anxiety

[R. 355–56.] Dr. Martin opined that the severity of Plaintiff's impairments was supported by evidence of "continued mood swings with depressive episodes . . . low energy level." [R. 356.] Dr. Martin described the side effects of Plaintiff's medications (Haldol, Seroquel, Wellbutrin, Vistaril, and Clonazepam) to include "dizziness, sleepiness, fatigue, motor-muscle stiffness . . . irritability." [*Id*.] On average, Dr. Martin opined Plaintiff would be absent more than 3 time a month as a result of her impairments or treatment. [*Id*.] Dr. Martin concluded that Plaintiff would not be able to consistently meet the time requirements of a normal workweek on a sustained basis. [R. 357.]

Further, Dr. Martin opined Plaintiff exhibited the following functional limitations:

* marked restrictions on ADL
* extreme difficulties in social functioning
* extreme limitations in her ability to respond appropriately to supervisors, co-workers and the public given the pressures in any work setting
* often and "very frequent" deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner
* continual episodes of deterioration

[*Id*.] Additionally, Dr. Martin assessed Plaintiff with the following limitations:

* *marked limitations* in the ability to

    - remember locations and work-like procedures
    - understand and remember very short and simple instructions
    - understand and remember detailed instructions
    - carry out very short and simple instructions
    - carry out detailed instructions
    - maintain attention and concentration for extended periods
    - perform activities within a schedule and maintain regular attendance, and be punctual within customary tolerances
    - sustain an ordinary routine without special supervision
    - work in coordination with or proximity to others without being distracted by them
    - make simple work-related decisions

- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
- ask simple questions or request assistance
- accept instructions and respond appropriately to criticism from supervisors
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes
- interact appropriately with supervisors
- follow work rules
- cope with work stresses
- function independently
- behave in an emotionally stable manner
- relate predictably in social situations
- consistently demonstrate reliability

* *moderate limitations* in the ability to

- interact appropriately with the general public
- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness
- use appropriate judgment
- maintain personal appearance and hygiene

* *not markedly limited* in the ability to

- respond appropriately to changes in the work setting
- be aware of normal hazards and take appropriate precautions
- travel in unfamiliar places or use public transportation
- set realistic goals or make plans independently of others

[R. 358–59.]

Even in light of these limitations, Dr. Martin opined Plaintiff could manage her own benefits in her best interest.  [R. 359.]  He also opined that Plaintiff's condition has existed and persisted since at least June 7, 2011.  [*Id.*]

### ALJ's Weighing of Dr. Martin's Opinion

The ALJ expressly considered the opinion of Dr. Martin outlined in the July 2013 Mental RFC evaluation and determined that Dr. Martin's opinion was entitled to "no

22

significant weight" and "no weight." [R. 14–15.] The ALJ summarized certain treatment notes of Dr. Martin and concluded that Dr. Martin's assessment was contradicted by his treatment records; thus, the ALJ could give no weight to the opinion. [*Id*.]

Further, the ALJ explained her consideration of Plaintiff's mental impairments in light of the four broad functional areas set out in the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairments. [R. 15–16.] And, the ALJ found that Plaintiff had mild limitations in her ADL; no limitations in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation of extended duration. [*Id*.] Thus, the ALJ determined that Plaintiff's "mental disorders cause no severe impairments." [R. 16.] The ALJ noted that her assessment of Plaintiff's mental impairment was consistent with those of the State agency psychologists who concluded that Plaintiff's mental functioning limitations were mild. [R. 17.] The ALJ also opined that her conclusion was consistent with Plaintiff's minimal treatment history between 2011 and 2013, no hospitalization due to mental problems, and routine medication follow up evaluations several times a year. [R. 16.]

The ALJ also recognized, however, that the limitations identified did not constitute an RFC assessment but were used to rate the severity of mental impairments at Steps 2 and 3, and that the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process required a more detailed assessment. [R. 17.] As noted above, with respect to Plaintiff's RFC, the ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only perform frequent bilateral handling and fingering and frequent use of hand controls with the bilateral upper

23

> extremities. The claimant can frequently stoop, kneel, crouch,
> crawl, and climb ramps and stairs. She can occasionally climb
> ladders, ropes, and scaffolds. The claimant should avoid even
> moderate exposure to extreme cold and extreme heat, and she
> needs to avoid concentrated exposure to wetness.

[R. 17.]

### Discussion

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well
> supported by medically acceptable clinical and laboratory
> diagnostic techniques or is inconsistent with the other

24

> substantial evidence in the case record means only that the
> opinion is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical opinions
> are still entitled to deference and must be weighed using all of
> the factors provided in 20 C.F.R. 404.1527 and 416.927. In
> many cases, a treating source's opinion will be entitled to the
> greatest weight and should be adopted, even if it does not
> meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).

Upon review, the Court finds the ALJ's analysis was inconsistent with the legal standard contained in 20 C.F.R. § 404.1527 for evaluating treating physician opinions. First, under this standard, the ALJ is obligated to weigh a treating physician's opinion in light of a series of enumerated factors relating to the nature and extent of the treatment relationship and whether the treater is specialized and offering an opinion in the area of his specialization. The ALJ failed to address any of these factors. The Court notes that, although the ALJ did not mention it, Dr. Martin had examined Plaintiff many times; had an on-going treatment relationship with Plaintiff; Dr. Martin's opinion was consistent with the part of the record that Plaintiff had a history of mental disorders; Dr. Martin was a specialist with respect to mental health; and Dr. Martin's opinion concerned mental health, his area of specialization. Second, while the ALJ explained that certain limitations identified in Dr. Martin's opinion were inconsistent with his own treatment records, the ALJ provided no explanation for her wholesale rejection of the remaining, numerous limitations outlined in Dr. Martin's opinion. As stated above, the fact that a treating source's medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques only means that the opinion is not entitled to "controlling weight," not that the opinion should be completely rejected. *See* SSR 96-2p. Treating source medical opinions are still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. While an ALJ properly may determine to give less weight to a certain medical opinion, in this case, it appears that the ALJ did not sufficiently analyze those listed factors. Therefore, substantial evidence does not support the ALJ's determination to give Dr. Martin's opinion no weight.

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974); *see also Johnson*, 434 F.3d at 653 (if relevant evidence exists as a reasonable mind might accept as adequate to support a conclusion, then the substantial evidence standard is satisfied). In this case, after the ALJ decided to give Dr. Martin's opinion no weight and determined that Plaintiff had no severe mental impairment at Step 2, the ALJ then failed to consider Plaintiff's mental functional limitations any further in the evaluative process, particularly at Step 4. Within the RFC, the ALJ did not impose any limitations based on a mental impairment (severe or non-severe). For example, even though the ALJ found that Plaintiff suffered mild limitations in her ADL and in her concentration, persistence and pace, and the ALJ acknowledged that Plaintiff experienced side effects from her medications, there is no indication that the ALJ considered these limitations, or any limitations associated with Plaintiff's non-severe mental impairments, in assessing the RFC.[8] *See Mazyck v. Astrue*,

---

[8]Even if the ALJ properly gave Dr. Martin's opinion no weight, the ALJ still erred by failing to consider Plaintiff's non-severe mental impairments in the RFC determination.

C/A No. 8:10-2780-TMC, 2012 WL 315648, *8–9 (D.S.C. Feb.1, 2012) (reversing the Commissioner's decision where the ALJ provided absolutely no discussion of the claimant's non-severe impairments, whether they impacted his RFC, or whether the ALJ considered them in combination with his severe impairment). Accordingly, the ALJ's RFC determination is not supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Because the Court finds the ALJ failed to properly consider and weigh the opinion of Dr. Martin and the RFC determination is not supported by substantial evidence, remand is appropriate. The Court declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be REVERSED and REMANDED for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO RECOMMENDED.


July 27, 2015                              s/Jacquelyn D. Austin
Greenville, South Carolina          United States Magistrate Judge