IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carolyn Denise Bryant, ) | | C/A No.: 8:14-cv-02087-TLW |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | **ORDER** |
| Carolyn W. Colvin, Commissioner of ) | | |
| Social Security, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

    The Plaintiff, Carolyn Denise Bryant ("Plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"), denying Plaintiff's claims for Disability Insurance Benefits pursuant to the Social Security Act. (ECF No. 1). This matter is before the Court for review of the Report and Recommendation ("the Report") filed on July 27, 2015 by United States Magistrate Judge Jacquelyn D. Austin (ECF No. 18), to whom this case was previously assigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), DSC. In the Report, the Magistrate Judge recommends that the Court reverse the Commissioner's decision and remand the case for administrative action consistent with the recommendation outlined in the Report. The Defendant filed objections to the Report on August 11, 2015. (ECF No. 20). The Plaintiff filed a reply to the Defendant's objections on August 18, 2015. (ECF No. 21). The matter is now ripe for disposition.

    This Court is charged with conducting a <u>de novo</u> review of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is registered, and may accept,

reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636. In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections…. The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In light of the standard set forth in Wallace, the Court has reviewed, de novo, the Report, the objections thereto, and all other relevant filings. This Court notes the Magistrate Judge undertook a detailed analysis of the facts, record, and applicable law. The Report was comprehensive, which was helpful to this Court in its de novo review. In the Report, the Magistrate Judge found that reversal and remand to the ALJ is appropriate on the first issue raised by the Plaintiff – whether the ALJ committed reversible error by failing to give great weight to the opinion of Plaintiff's treating psychiatrist, Dr. Ernest Martin ("Dr. Martin"). Having thus found that reversal and remand to the ALJ are appropriate, the Magistrate Judge declined to specifically address Plaintiff's additional allegations of error. (See ECF No. 18 at 27). Following the Magistrate Judge's entry of the Report and Recommendation, the Defendant filed specific objections to the Report. (ECF No. 20). This Court has reviewed the Report and the objections and finds the Commissioner's position persuasive.

**DISCUSSION**

As noted, the Magistrate Judge found that the ALJ committed reversible error by failing to give great weight to the opinion of Plaintiff's treating psychiatrist, Dr. Martin. The Magistrate Judge determined that the ALJ erred in discounting this opinion because (1) the ALJ provided no explanation for the wholesale rejection of Dr. Martin's opinion; and (2) the ALJ failed to analyze the opinion under 20 C.F.R §§ 404.1527 and 416.927, which contain the standard for evaluating treating physician opinions.

**1. ALJ's Rejection of Dr. Martin's Opinion**

In considering the proper weight to assign a treating physician's opinion, an ALJ should decide whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404-1527(c)(2), 416.927(c)(2); see Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). If the opinion is well-supported, it is entitled to controlling weight. Id. However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Furthermore, "the opinions of a treating physician are not entitled to great weight where they are contradicted by the physician's own treatment notes, or by other evidence." King v. Colvin, No. 9:13-CV-00250-TLW, 2014 WL 4199529, at *7 (D.S.C. Aug. 22, 2014); see also Burch v. Apfel, 9 Fed. App'x 255, 260 (4th Cir. 2001). Nor will an ALJ "give any special significance to the source of an opinion on issues reserved to the Commissioner," including the residual functional capacity. 20 C.F.R. § 404.1527(d), 416.927(d). Finally, the Court notes that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Bishop v. Astrue, No. CA 1:10-2714-TMC, 2012 WL 951775, at *3 (D.S.C. Mar. 20, 2012).

The ALJ's Findings of Fact and Conclusions of Law – cited at length below – indicate that the ALJ carefully and thoroughly reviewed the record and explained the analysis that appears in the ALJ's decision:

> The claimant's medically determinable mental impairments of anxiety and depression do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities. While the claimant has a history of treatment for mental disorders, progress notes from her psychiatrist indicate that her symptoms are controlled with the use of medication. On May 4, 2011, the claimant reported she was doing well on her current medications, which included Seroquel, Wellbutrin, and Clonazepam. Her psychiatrist, Ernest Martin, M.D., noted the claimant's anxiety was adequately controlled. Her affect was bright and mood was euthymic. The claimant denied suicidal ideations, homicidal ideations, and showed no evidence of psychosis. Medications were not adjusted. During a follow up evaluation performed on December 19, 2011, the claimant reported some increasing anxiety. Her Clonazepam mediation was increased and individual therapy was recommended.
>
> By May 7, 2012, the claimant's examination had again stabilized and mental status examination was unremarkable. On June 9, 2012, the claimant told Dr. Martin that she had recently separated from her husband was getting a divorce. During a follow up on October 29, 2012, the claimant stated that she was having mood swings. Her mental status examination was rather unremarkable with normal speech, grooming, and behavior, linear thought, full orientation, normal memory, and intact insight and judgment. The claimant was requesting a stimulant for energy, but needed a cardiologist to clear her. The claimant stated she was working with her husband and was cautious.
>
> On June 17, 2013, the claimant had a six month follow up with Dr. Martin. She stated that while she still had some mood swings, she interacts and participates with others and has no acute complaints. Mental status examination remained unremarkable.
>
> On July 29, 2013, Dr. Martin completed a medical assessment in the claimant's behalf. He stated that the claimant has been diagnosed with major depression, recurrent, with psychotic features. Dr. Martin reported that the claimant's symptoms include poor memory, appetite disturbance, sleep disturbance, personality change, mood disturbance, emotional disturbance, delusions or hallucinations, recurrent panic attacks, anhedonia, paranoia, difficulty thinking or concentrating, feelings of guilt and worthlessness, [oddities] of thought, speech and behavior, perceptual disturbance, decreased energy, a blunt, flat, or inappropriate affect, and generalized persistent anxiety. Dr. Martin further noted that the claimant has side effects from her medications (on this date Haldol, Seroquel, Wellbutrin, Vistaril, and

Clonazepam), which include dizziness, sleepiness, fatigue, motor-muscle stiffness, and irritability. Dr. Martin opined the claimant's impairment or treatment would cause her to be absent from work more than three times a month and she could not consistently meet the requirements of a normal workweek on a sustained basis. Dr. Martin opined the claimant had marked restrictions in activities of daily living, extreme difficulties in maintaining social functioning, and extreme limitations in her ability to respond appropriately to supervisors, coworkers, and the public given the pressures in any work setting. In addition, Dr. Martin opined the claimant would have very frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner and continual episodes of deterioration or decompensation in work or work-like settings. Marked limitations in almost all functional areas were assessed including in the ability to understand, remember, and carry out very short and simple instructions, in the ability to ask simple questions or request assistance, and the ability to use appropriate judgment.

I have considered Dr. Martin's opinion and give it no significant weight in this decision. Dr. Martin's assessment is contradicted by his treatment records. While he states the claimant has moderate limitations in her ability to use appropriate judgment, in his progress notes he stated the claimant's judgment was intact. He stated the claimant had poor memory, but in his progress notes said memory was normal. Further, her progress notes from 2011, 2012, and 2013, show only brief reports of mood swings due to social stressors, which responded well to medication adjustment. There is no evidence of any psychotic symptoms or any anxiety or mood swings that significantly impacted her day to day activities. Given these inconsistencies, I can give no weight to his opinion.

In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant reported few limitations in day to day activities caused by mental problems, instead focusing primarily on pain caused by her rheumatoid arthritis (RA). After questioning by her representative, the claimant did say that she does not feel like doing much of anything due to her mental disorders. She said she has had to stop the car because she did not know where she was going. In a Function Report dated June 8, 2012, the claimant reported she does not have any problems dressing, bathing, caring for her hair, feeding herself, or using the toilet. She said she does not need special reminders to take care of personal needs or to take her medication. The claimant reported she prepares small meals daily and performs light cleaning and laundry. She said she goes outside daily, can ride in and drive a car, and shops in stores and online. Furthermore, the claimant reported she could pay bills, count change, and handle a savings account. She said she watches television and listens to music daily. A review of the claimant's treatment record with Dr. Martin, shows

no reports of significant limitations in activities of daily living consistent with the claimant's reports that she cannot get out of bed. The claimant's mental status examinations have been unremarkable with normal memory, intact judgment, and normal though content. This evidence suggests that if the claimant has any limitations in her day to day activities due to mental problems, they are only mild.

The next functional area is social functioning. In this area, the claimant has no limitation. In a Function Report dated June 8, 2012, the claimant reported that she sometimes cannot be around large crowds because she has anxiety. However, in the same report the claimant stated that she spends time with others, including her children on a daily basis, talks on the phone, and talks with friends when they visit her. She attends church daily, does not need anyone to accompany her places, and she does not have problems getting along with others. The claimant reported that she gets along with authority figures well and she has never been fired or laid off from a job because of problems getting along with others. During the claimant's various physical and psychological examinations, providers have not reported any significant problems in the claimant's ability to communicate or interact with others. This suggests the claimant has no limitations in social functioning.

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. In the Function Report from June 8, 2012, the claimant said she does not finish what she starts and can only pay attention for 15 to 30 minutes. She also said she does not handle stress or changes in routine well. However, the claimant reported she follows written and spoken instructions okay and can perform many activities of daily living with minimal difficulty. She attend[s] church, watches television, shops in stores, drives, cooks, and cleans. All of these activities require significant concentration ability and are inconsistent with the claimant's allegations. Further, the claimant's treatment notes indicate that she has not reported significant problems with her concentration to Dr. Martin, her psychiatrist. Attention and concentration were described as good in December 2011, May 2012, June 2012. The only time it was fair (not poor) was in April and June 2013. This suggests the claimant has no more than mild limitations in concentration, persistence, or pace.

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, I conclude that the claimant's mental disorders cause no severe impairments. This conclusion is consistent with the claimant's minimal treatment history between 2011 and 2013. The claimant has not required hospitalization for mental problems since her alleged onset date, she has only had routine medication follow up

> evaluations a few times a year, and she has not been receiving any therapy or counseling. The evidence supports a conclusion that the claimant's mental disorders are well controlled with the use of medication and cause no more than mild limitations on her functioning. This conclusion is also consistent with those of the State agency's psychological consultants, who conclude that the claimant has no more than mild limitations in mental functioning.

(Id. at 14-17 (internal citations omitted)). The careful and thorough discussion undertaken by the ALJ illustrates Dr. Martin's treatment notes are at odds with, and often directly opposed to, the findings indicated in Dr. Martin's RFC.

Having reviewed the relevant authority and the record – including the ALJ's Decision (quoted in large part above) and the Exhibits (see, e.g., Tr. 269-270, 299-301, 355-359, 360-362) – the Court finds that the ALJ correctly represented and fully evaluated the record. Furthermore, the Court concludes that the ALJ's decision to discount Dr. Martin's opinion is supported by substantial evidence. In her decision, the ALJ found that the opinion of Dr. Martin was extensively contradicted by Dr. Martin's own treatment notes for the entire relevant period of alleged disability.  (Tr. 15). That determination is at the heart of the ALJ's decision to give "no significant weight" to Dr. Martin's opinion. (Id.). This Court concludes that the ALJ properly decided to give little or no weight to Dr. Martin's opinion as a result of comparing the treatment notes to the Mental Residual Capacity Evaluation ("RFC") form.

Additionally, the inconsistencies between Dr. Martin's own treatment notes and his ultimate opinion regarding disability are all the more pronounced in light of the remainder of the record. As the ALJ correctly notes, the record includes the opinions of two state agency physicians, neither of which support a finding of disabling physical limitations on the part of the Plaintiff. (See Tr. 20, 63-64, 89). Additionally, the Plaintiff's treatment history and personal reports of her abilities and daily activities contradict a number of the findings made by Dr. Martin in his opinion.

(See Tr. 15-16). For example, the Plaintiff "reported few limitations in day to day activities caused by mental problems," "goes outside daily, can ride in and drive a car, and shops in stores and online," and "attends church daily, does not need anyone to accompany her places, and… does not have problems getting along with others." (Tr. 15-16). These findings are consistent with Dr. Martin's treatment notes, which demonstrate that the Plaintiff has no significant limitations on daily living, but are inconsistent with Dr. Martin's ultimate opinion on disability, which indicates that the Plaintiff has significant limitations. (See Tr. 269-270, 299-301, 355-359, 360-362). Finally, the ALJ notes that the Plaintiff has not required hospitalization for mental problems since her alleged disability onset date and that she has only had routine medication follow-up evaluations. (Tr. 16). As the ALJ stated, this "evidence supports a conclusion that the claimant's mental disorders are well controlled with the use of medication and cause no more than mild limitations," and thus the evidence is "consistent with… the State agency's psychological consultants…." (Tr. 16-17). This Court has carefully reviewed the treatment notes and exhibits cited on page 15 of the transcript (page 5 of the ALJ's Findings of Fact and Conclusions of Law).

The Court also notes that Dr. Martin's opinion is recorded on a RFC form, a "checkbox" form with a few brief handwritten notes. (Tr. 355-359). This form indicates that the Plaintiff had marked functional restrictions in almost every area but provides no detailed support or information for these conclusions or the manner in which they were reached. (Id.). As previously noted, an RFC is an issue reserved to the Commissioner and is not entitled to special consideration, and furthermore, checkbox and "fill in a blank" forms are "weak evidence at best." 20 C.F.R. § 404.1527(d), 416.927(d); Bishop, 2012 WL 951775, at *3.

In short, given the form of Dr. Martin's opinion – a checkbox RFC questionnaire – combined with the medical opinion's inconsistencies with the bulk of the evidence in the record, the Court concludes that substantial evidence supports the ALJ's decision to give Dr. Martin's opinion little or no weight.

**2. ALJ's Consideration of Regulatory Factors**

The Social Security Regulations also indicate that the ALJ will consider certain factors in determining what weight to give to a medical opinion. These factors appear in 20 C.F.R §§ 404.1527 and 416.927 and include: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c), 416.927(c). In analyzing the factors, however, "[t]he ALJ need not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions, as long as good reasons are provided for the assigned weight." Munson v. Astrue, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008) (internal quotation marks omitted); see also Williams v. Colvin, No. CIV.A. 3:12-1422-JRM, 2013 WL 3338492, at *7 (D.S.C. July 2, 2013) ("The ALJ is not, however, required to expressly apply each of these factors in deciding what weight to give a medical opinion and not every factor applies in every case.").

The Court has carefully reviewed the ALJ's decision and finds that the ALJ thoroughly considered the necessary regulatory factors in discounting Dr. Martin's opinion. To begin with, ALJ expressly stated that "I have… considered opinion evidence in accordance with the requirements of 20 C.F.R §§ 404.1527 and 416.927." (Tr. 17); see Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."). Moreover, it is clear from the ALJ's decision that the ALJ worked through each of

9

the regulatory factors. For example, the ALJ notes that Dr. Martin was the Plaintiff's psychiatrist, indicating that the ALJ considered the physician's specialization. Furthermore, the ALJ noted that the Plaintiff has a history of treatment for mental disorders prior to the relevant period and also discussed with great detail every examination with Dr. Martin during the relevant period. (Tr. 14). These discussions indicate that the ALJ considered the examining relationship and treatment relationship factors. Finally, the ALJ clearly discussed the supportability of Dr. Martin's opinion and the consistency of the opinion with the record as a whole, rounding out the remaining regulation factors. (Tr. 15). As a result the Court finds that the ALJ properly considered the regulation factors listed in §§ 404.1527 and 416.927.

## CONCLUSION

In summary, the Court concludes that substantial evidence supports the ALJ's decision to discount Dr. Martin's opinion and to give it little or no weight.  In addition, the Court finds that the ALJ properly considered the factors as required pursuant to 20 C.F.R §§ 404.1527 and 416.927. Accordingly, the Court declines to accept the Report and Recommendation (ECF No. 18), which recommended that the ALJ erred in its consideration of Dr. Martin's opinion. Because the remaining two grounds for review raised in the Plaintiff's Complaint have not yet been analyzed, the Clerk is directed to **REMAND** this case to the Magistrate Judge to address the remaining issues.

s/ Terry L. Wooten
TERRY L. WOOTEN
Chief United States District Judge

September 28, 2015
Columbia, South Carolina