IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Carolyn Denise Bryant, | ) | Civil Action No. 8:14-cv-02087-TLW-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on remand from the Honorable Chief United States District Judge Terry L. Wooten.  On September 28, 2015, Chief Judge Wooten entered an Order [Doc. 23] declining to accept the Report and Recommendation entered on July 27, 2015 [Doc. 18], wherein the undersigned had recommended that the ALJ erred in its consideration of Dr. Ernest Martin's opinion.  This Court has determined that "substantial evidence supports the ALJ's decision to discount Dr. Martin's opinion and to give it little or no weight." [Doc. 23 at 10.]  This Court also found "the ALJ properly considered the factors as required pursuant to 20 C.F.R §§ 404.1527 and 416.927" to determine what weight to give a medical opinion.  [*Id*.]  Because Plaintiff's remaining grounds for review raised in Plaintiff's Complaint had not yet been analyzed, the Court remanded this action to the undersigned to address those issues. [*Id*.]

Set forth below is the undersigned's recommendations on Plaintiff's remaining issues.[1]  This Court, of course, adopts and incorporates herein Chief Judge Wooten's analysis as set forth in the September 28, 2015, Order.

## PROCEDURAL HISTORY

On April 24, 2012, Plaintiff filed applications for DIB and SSI, alleging an onset of disability date of June 7, 2011.  [R. 141–153.]  The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 60–111.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on August 28, 2013, ALJ Kelly Wilson conducted a de novo video hearing on Plaintiff's claim.  [R. 28–59.]

The ALJ issued a decision on March 3, 2014, finding Plaintiff not disabled.  [R. 11–23.]  At Step 1,[2] the ALJ found Plaintiff meets the insured status requirements of the Social Security Act ("the Act") through December 31, 2016, and has not engaged in substantial gainful activity since June 7, 2011, the alleged onset date.  [R. 13–14, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had a severe impairment of rheumatoid arthritis.  [R. 14, Finding 3.]  The ALJ found that Plaintiff's medically determinable mental impairments of

---

[1]Plaintiff's brief actually listed five grounds of error. [*See* Doc. 14.] However, this Court had determined that Plaintiff really had four grounds for relief because grounds one (rejection of Dr. Martin's opinion) and two (giving more weight to non-examining, non-treating physician consultant opinions than to Dr. Martin's opinion) were part of the same argument.  This Court concludes that Chief Judge Wooten's Order [Doc. 23] implicitly found that the ALJ properly gave more weight to non-examining, non-treating physician consultant opinions than to Dr. Martin's opinion.  Thus, that ground for relief is not discussed herein.  Regardless, even if Chief Judge Wooten's Order left that issue open, substantial evidence supports the ALJ's decision to give significant weight to Dr. El-Ibiary and Dr. Hopkins's opinions because they are consistent with the objective medical records.

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

anxiety and depression did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities.  [R. 14–17.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 17, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work ("PRW"), the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only perform frequent bilateral handling and fingering and frequent use of hand controls with the bilateral upper extremities. The claimant can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. The claimant should avoid even moderate exposure to extreme cold and extreme heat, and she needs to avoid concentrated exposure to wetness.

[R. 17, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could perform her PRW as a cashier and retail sales associate.  [R. 22, Finding 6.] Accordingly, the ALJ found Plaintiff had not been under a disability as defined by the Act from June 7, 2011, through the date of the decision.  [R. 22, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council declined.  [R. 1–6.]  Plaintiff filed this action for judicial review on May 29, 2014.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:[3]

---

[3]As explained above, Plaintiff's first (and second) ground for relief has been decided. Thus, only three additional grounds are discussed.

3

2.    the ALJ committed reversible error in failing to find Plaintiff's psychiatric condition was not severe [*id.* at 17]; and,

3.    the ALJ's finding that Plaintiff could perform her PRW is not supported by substantial evidence [*id.* at 20–22].

Plaintiff also claims the Appeals Council committed reversible error by failing to properly consider additional medical evidence submitted by Plaintiff. [*Id.* at 17–20.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

2.    the ALJ's finding that Plaintiff's mental impairment was non-severe is supported by substantial evidence [*id.* at 15–18]; and

3.    the ALJ's RFC determination was appropriate and the ALJ properly found that Plaintiff could perform her PRW  [*id.* at 6–8].

The Commissioner also contends that the Appeals Council acted properly because Plaintiff's post-hearing submissions did not warrant remand and did not qualify as new and material evidence. [*Id.* at 18–21.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning

4

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the

5

courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation.  *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v.*

*Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence

six, the parties must return to the court after remand to file modified findings of fact.

*Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and

does not enter a final judgment until after the completion of remand proceedings.  *See*

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an

order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C.

§ 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or which
> has lasted or can be expected to last for a continuous period
> of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

8

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for

9

pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

10

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

13

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

14

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself,

> support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb

17

credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Plaintiff's Background with the Administration**

The ALJ set forth Plaintiff's history with the Administration as follows.  Plaintiff reported a prior period of disability between 1998 and 2008 due to mental disorders.  [R. 11.] The Administration granted Plaintiff's disability claim based on her mental disorders at some points between 1998 and 2008. [*Id*.]   The ALJ summarized the relevant Commissioner's records as follows:

> Social security records indicate the claimant's benefits were ceased and restarted on various occasions between 2002 and 2008 due to work activity and requests for reinstatement.  This eventually led to an overpayment of benefits, which is not under consideration in this determination.  In July 2008, the claimant was notified that she could no longer receive provisional Social Security disability benefits based on her request for reinstatement. The last date for which she could receive provisional benefits was June 2008. The claimant appealed this decision and filed a request for a hearing. A hearing was scheduled but the claimant did not appear as directed. Consequently, her request for hearing was dismissed on March 9, 2010.

[*Id*.]

Plaintiff filed her present application for DIB and SSI on April 24, 2012, alleging disability beginning June 7, 2011, due to major depression with anxiety and rheumatoid arthritis.  [R. 60.]

18

**Plaintiff's Severe Impairments**

Plaintiff contends that the ALJ erred by failing to consider her psychiatric and mental problems as a severe impairment at Step 2 of the sequential analysis. The Commissioner argues that the ALJ reasonably concluded that Plaintiff's depression was not a severe impairment, and, even if there was an error, Plaintiff did not satisfy her burden of proof. The Commissioner alleges that the ALJ proceeded to other steps of the sequential evaluation process; thus, the ALJ's decision at Step 2 was not dispositive of this case. This Court agrees with the Commissioner.

### *ALJ's Determination of Severe Impairments*

As noted above, the ALJ found at Step 2 that Plaintiff had a severe impairment of rheumatoid arthritis. [R. 14, Finding 3.] The ALJ found that Plaintiff's medically determinable mental impairments of anxiety and depression did *not* cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. [R. 14–17.] Further, the ALJ explained her consideration of Plaintiff's mental impairments in light of the four broad functional areas set out in the disability regulations for evaluating mental disorders and section 12.00C of the Listing of Impairments. [R. 15–16.] And, the ALJ found that Plaintiff had mild limitations in her activities of daily living ("ADL"); no limitations in social functioning; mild limitations in concentration, persistence, or pace; and no episodes of decompensation of extended duration. [*Id*.] Thus, the ALJ determined that Plaintiff's "mental disorders cause no severe impairments." [R. 16.] The ALJ noted that her assessment of Plaintiff's mental impairment was consistent with those of the State agency psychologists who concluded that Plaintiff's mental functioning limitations were

mild.  [R. 17.]  The ALJ also opined that her conclusion was consistent with Plaintiff's minimal treatment history between 2011 and 2013, no hospitalization due to mental problems, and routine medication follow up evaluations several times a year. [R. 16.]

**Discussion**

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G); *see also Bryant v. Colvin*, 571 F. App'x 186, 188 (4th Cir. 2014) (explaining what the ALJ must determine at Step 2).  It is the claimant's burden to prove that she suffers from a medically severe impairment.  *See Sawyer v. Colvin*, 995 F. Supp. 2d 496, 509 (D.S.C. 2014).

Plaintiff argues that Dr. Martin's functional capacity evaluation was evidence that Plaintiff suffered from mental problems that interfered with her ability to work.  However, this Court already has ruled that the ALJ properly gave Dr. Martin's opinion little or no weight.  Thus, Dr. Martin's opinion was not sufficient evidence that Plaintiff suffered from a psychiatric severe impairment.

Further, Plaintiff argues that her history of a severe psychiatric condition which had prevented her from working from 1998 through 2008 was evidence that her psychiatric condition should have been deemed to be a "severe" impairment.  However, this Court has determined that, "the ALJ correctly represented and fully evaluated the record." [Doc. 23 at 7.] Also, in this case, the relevant time period begins with the alleged onset date of June 7, 2011.  And, the ALJ reasonably determined that Plaintiff's mental disorders were well

controlled with medication and had not required hospitalization after the alleged onset date. Therefore, Plaintiff did not carry her burden to prove that she suffered from a medically severe impairment related to her alleged mental problems.  And, substantial evidence supports the ALJ's Step 2 finding.[8]

**Plaintiff's Ability to Perform Past Relevant Work**

Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff could perform her PRW as a cashier or retail sales clerk.  She argues that those jobs require repetitive and almost constant use of hands and arms.  But, with her rheumatoid arthritis which causes stiffness and swelling in the joints of both hands and elbows, she cannot do such physical activity.  The Commissioner appears to argue that the ALJ's determination regarding Plaintiff's ability to perform PRW is supported by the objective relevant medical evidence.  The Court agrees with the Commissioner.

*ALJ's Step 4 Determination*

Before addressing Step 4, Plaintiff's ability to perform her past relevant work ("PRW"), the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[8]Even if the ALJ had erred at Step 2, the error is harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"); *Sawyer*, 995 F. Supp. 2d at 509 (discussing harmless error at Step 2 stage). The determination of Plaintiff's disability did not end at Step 2. The ALJ found at least one severe impairment; thus, she continued through the sequential evaluation process and considered all impairments both severe and nonsevere. *See Singleton v. Astrue*, C/A No. 9:08-1892-CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009) (discussing how error at Step 2 may be harmless).  The ALJ acknowledged the requirement that she consider all of a claimant's impairments at Step 4, including nonsevere impairments, and it appears that she did so. [R. 13–17.] She specifically noted that the RFC assessment reflected the degree of mental function limitation she had found.  [R. 17.]

21

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> she can only perform frequent bilateral handling and fingering
> and frequent use of hand controls with the bilateral upper
> extremities. The claimant can frequently stoop, kneel, crouch,
> crawl, and climb ramps and stairs. She can occasionally climb
> ladders, ropes, and scaffolds. The claimant should avoid even
> moderate exposure to extreme cold and extreme heat, and she
> needs to avoid concentrated exposure to wetness.

[R. 17, Finding 5.]  Based on this RFC finding and testimony from a vocational expert

("VE"), the ALJ determined at Step 4 that Plaintiff could perform her PRW as a cashier and

retail sales associate.  [R. 22, Finding 6.]

### Discussion

Plaintiff bears the burden of establishing that she is incapable of performing her

PRW.  *See Sartor v. Astrue*, C/A No. 3:11-2703-RBH-JRM, 2012 WL 7656443, at *6

(D.S.C. Dec. 12, 2012), *adopted*, 2013 WL 808836 (D.S.C. March 5, 2013).  A claimant

is not disabled if she is capable of performing her PRW either as she performed it in the

past or as it is generally required by employers in the national economy.  *Id*.  Although

Plaintiff argues that the ALJ's hypothetical questions to the VE wrongfully presumed that

Plaintiff could frequently use her hands and arms to perform work, the ALJ thoroughly

discussed the evidence related to Plaintiff's physical condition including tenderness in

joints, range of motion, and grip strength. [R. 20–21.] The ALJ determined that Plaintiff's

arthritis pain was relatively well controlled with medication, and substantial evidence

supports her decision.  And, the ALJ properly accounted for Plaintiff's physical limitations

in the RFC and questions to the VE.  The VE opined that a person with Plaintiff's RFC

could perform jobs of cashier and retail sale associate, and the ALJ properly relied on the

VE testimony as supported by the Dictionary of Occupational Titles and "Occubrowse vocational program." Thus, Plaintiff did not carry her burden of establishing she is incapable of performing her PRW, and substantial evidence supports the ALJ's determination at Step 4.

**Appeals Council's Review**

Plaintiff contends that the Appeals Council committed reversible error because she submitted a new and material record to it from the Piedmont Arthritis Clinic that showed she suffered from severe physical limitations due to rheumatoid arthritis that had persisted since 2011; the Appeals Council failed to properly consider the new record, assign weight, and specifically analyze it. The Commissioner contends that the Appeals Council properly considered the additional evidence and reasonably concluded that it did not warrant changing the ALJ's decision. The Court agrees with the Commissioner.

### *Plaintiff's Additional Evidence*

After the ALJ's March 4, 2014, decision, Plaintiff submitted to the Appeals Council a copy of a follow up progress note by Dr. Josette J. Johnson, Piedmont Arthritis Clinic, related to Plaintiff's August 26, 2013, visit. [R. 363–66.] The follow up progress note was related to her rheumatoid arthritis, and it described her "baseline chronic condition." [*Id*.] Also, the progress note described Plaintiff's tenderness, range of motion, and swelling in certain joints and body parts. [*Id*.]

### *Appeals Council's Decision*

On May 2, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. [R. 1–5.] It "considered . . . the additional evidence listed on the enclosed

Order of Appeals Council (medical records from Piedmont Arthritis Clinic dated 8/26/2013)." [*Id*.] Specifically, it stated that it considered the additional evidence from the Piedmont Arthritis Clinic, and it found "this information does not provide a basis for changing the [ALJ's] decision." [*Id*.]

### Discussion

After the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. § 404.968; *see also id.* § 404.970(b) (stating that the Appeals Council will consider new and material evidence). In *Meyer v. Astrue*, the Fourth Circuit held that

> the regulatory scheme does not require the Appeals Council to do anything more than . . . "consider new and material evidence . . . in deciding whether to grant review." *Wilkins* [*v. Sec'y, Dep't of Health & Human Servs.*], 953 F.2d [93,] 95 [(4th Cir. 1991)]; *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to articulate its reasoning when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting contention that Appeals Council must "make its own finding" and "articulate its own assessment" as to new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992) (holding that "the Appeals Council may deny review without articulating its reasoning" even when new and material evidence is submitted to it).

662 F.3d 700, 706 (4th Cir. 2011) (footnote omitted). However, the court went on to note,

> Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review." *Martinez*,

24

> 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6
> (noting that in "fairness to the party appealing the ALJ's
> decision, the Appeals Council should articulate its reasoning"
> when it rejects new material evidence and denies review).

*Id.*

The Fourth Circuit then observed that a lack of additional fact finding by the Appeals Council would not render judicial review impossible if the record contained an adequate explanation of the Commissioner's decision. *Id.* at 707 (citation omitted). In such a case, a court could conclude that, even considering the new evidence, the ALJ's decision was supported by substantial evidence. *See id.* (citation omitted). On the other hand, if the newly presented evidence was not controverted by other record evidence, the new evidence could support finding that the ALJ's decision was not supported by substantial evidence. *See id.* (citation omitted). However, turning to the facts of the case before it, the Fourth Circuit noted the evidence was not one-sided, and the court "simply [could ]not determine whether substantial evidence support[ed] the ALJ's denial of benefits." *Id.* Specifically, as to the opinion of the claimant's treating physician submitted to the Appeals Council, "no fact finder ha[d] made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id.* Consequently, the Fourth Circuit concluded the case must be remanded for further fact finding because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," a job a reviewing court "cannot undertake [] in the first instance." *Id.*

Here, Plaintiff contends the evidence from her August 26, 2013, doctor appointment was "new" because the ALJ had not considered it when making her decision and "material"

because it related to the severity of Plaintiff's impairments. While Plaintiff does not explain in her brief before this Court why she did not obtain and submit the progress note to the ALJ, regardless this Court finds that the evidence was not material because it would not have changed the outcome. The ALJ had determined that Plaintiff's rheumatoid arthritis was a severe impairment, limited her RFC to light work, and discussed the evidence related to Plaintiff's physical problems including certain tenderness in joints, some pain, and some limits to range of motion. The August 26, 2013, progress note was consistent with the ALJ's findings, and it did not indicate that Plaintiff's rheumatoid arthritis was more severe than the ALJ had already determined.

Additionally, this Court finds that the Appeals Council did what *Meyer* requires; it considered the new evidence in deciding whether to grant review. There is no error with the Appeals Council's decision to deny review of Plaintiff's case after it considered the August 26, 2013, progress note because it found no basis for changing the ALJ's decision. This Court finds the Appeals Council's decision to be reasonable. And, even with the additional progress note, the substantial evidence supports the ALJ's decision.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the decision of the Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.


October 7, 2015                              s/Jacquelyn D. Austin
Greenville, South Carolina              United States Magistrate Judge